**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JASON BRADLEY HARRIS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-03-4499 |
| | § | |
| NATIONAL SEAL COMPANY | § | |
| ENHANCED SEVERANCE PAY PLAN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This case was filed on October 17, 2003 by employees of the National Seal Company

who allegedly lost their jobs in November and December 2001.  The plaintiffs did not sue

the National Seal Company.  Instead, they named the National Seal Company Enhanced

Severance Plan (the "National Seal Plan" or "Plan") as the only defendant.  The plaintiffs

alleged that they had been deprived of severance benefits owed under the Plan, in violation

of the Employee Retirement and Income Security Act ("ERISA"), 11 U.S.C. § 1132(d)(1).

The defendant Plan did not answer or otherwise respond to the plaintiffs' complaint.

(Docket Entry No. 35 at 2).  In April 2004, the district court entered default judgment against

the National Seal Plan.  (*Id.*).  The judgment remains outstanding.

Over two years later, the plaintiffs sought to obtain payment of that judgment from

GSE Lining Technology, Inc. by substituting it as a party defendant in place of the National

Seal Plan.  The factual basis asserted for the substitution is that GSE is the successor-in-

1

interest to the National Seal Company.  The legal basis asserted for the substitution is Rule

25(c) of the Federal Rules of Civil Procedure.  (Docket Entry Nos. 30, 37).  The plaintiffs

also seek a turnover of property from National Seal Plan and the appointment of a receiver

under Rule 64 of the Federal Rules of Civil Procedure and the Texas Civil  Practice &

Remedies Code § 31.002.  (Docket Entry Nos. 32, 39).  GSE has responded to the motions

and amended motions.  (Docket Entry Nos. 34, 35, 41, 44).[1]

Based on the motions, responses, and replies; the pleadings; the parties' submissions;

and the applicable law, this court denies the plaintiffs' motion and amended motion to

substitute GSE for the National Seal Plan and denies the plaintiffs' motion and amended

motion for turnover after judgment and appointment of a receiver.  The reasons are explained

in detail below.

## I.     Background

GSE acknowledges that it is the legal successor by two mergers to the National Seal

Company, but denies that it is the successor-in-interest to the National Seal Enhanced Benefit

Severance Plan.  The plaintiffs have submitted an affidavit from Guillermo Torres, president

of Serrot International, Inc., to explain the corporate relationships.  (Docket Entry No. 37,

Ex. 3).  The evidence shows that in the late 1980s, Waste Management Inc. ("WMI")

purchased the National Seal Company, which continued to do business as a WMI subsidiary.

(Docket Entry No. 37-3, ¶ 4).  In March 1999, WMI acquired the Serrot Corporation and

---

[1] The plaintiffs also filed a motion to amend the motion to substitute.  (Docket Entry No. 36).  That motion
is granted.

merged it with the National Seal Company.  (*Id.*, ¶ 7).  The merged entity was known as Serrot International, Inc.  (*Id.*).  In February 2002, GSE purchased the stock of Serrot International.  (*Id.*, ¶ 13).

The record shows that the National Seal Plan was created to provide certain severance benefits to the employees of the National Seal Company in the event of a certain identified contingency.  That contingency was the sale of 100% of the outstanding capital stock or all or substantially all of the assets of the National Seal Company before January 1, 2001.  The purported Plan would not go into effect unless a "sale"—as defined in the Plan—occurred before January 1, 2001.  This contingency did not occur.  The National Seal Company did not sell its stock or assets before January 1, 2001.  Instead, in 1999, WMI acquired the assets of Serrot Corporation, merged it into the National Seal Company, and renamed the merged companies Serrot International, Inc.  GSE acquired Serrot International in February 2002.  GSE has submitted an affidavit from Mike Lang, a WMI representative for whom Torres worked, stating that the National Seal Plan was not approved by WMI and could not have been because it was subject to a condition precedent that did not occur.  (Docket Order No. 35 at 4).  GSE has also submitted a letter sent to plaintiffs from Serrot International's general counsel stating that the National Seal Plan did not apply to them.  (*Id.*).

The plaintiffs are individuals who were allegedly fired by National Seal Company in 2001.  (Docket Entry No. 35 at 2).  In this suit, filed in 2003, the plaintiffs alleged that the National Seal Company Enhanced Severance Pay Plan violated ERISA by failing to pay them severance benefits.  (Docket Entry No. 35 at 1).  The plaintiffs did not sue the National

3

Seal Company, but only the National Seal Plan.  The plaintiffs could not effect service on the Plan and instead served the summons and complaint on the Secretary of Labor.  The National Seal Plan did not answer or otherwise appear.  The plaintiffs sought a default judgment. Before default was entered, GSE moved to intervene as a successor-in-interest to the National Seal Company.  GSE asserted that it intended to establish that the National Seal Company had not adopted the National Seal Plan, because the Plan was subject to a contingency that did not occur and never came into existence.  GSE sought to intervene to argue that the Plan could not be sued or a judgment taken against it because it did not exist. GSE sought to protect itself from precisely what has occurred here, an effort by the plaintiffs, unable to collect a default judgment against the National Seal Plan, from attempting to collect it against GSE.

The plaintiffs opposed the intervention, arguing that GSE lacked standing.  The court ruled on March 31, 2004 that GSE could not intervene, but cautioned the plaintiffs that they could be subject to penalties for wrongful execution if they attempted to collect a default judgment against the Plan from GSE.  (Docket Entry No. 35, Ex. 1, Hr'g Tr. 17, Mar. 31, 2004).

In April 2004, the court entered default judgment against the National Seal Plan in the amount of $103,293 in actual damages, $33,900 in attorney's fees, 6% in prejudgment interest, and 1.32% in postjudgment interest.  (Docket Entry No. 37 at 1).  The judgment remains outstanding.  (Docket Entry No.  35 at 2).

In December 2006, more than two years after judgment was entered, the plaintiffs

4

filed a motion under Rule 25(c) of the Federal Rules of Civil Procedure to substitute GSE as

the Plan's successor party-in-interest and a motion for turnover and appointment of a receiver

for the Plan.

## II.     The Motion to Substitute under Rule 25

Rule 25(c) of the Federal Rules of Civil Procedure provides:

> In any case of any transfer of interest, the action may be
> continued by or against the original party, unless the court upon
> motion directs the person to whom the interest is transferred to
> be substituted in the action or joined with the original party.

FED. R. CIV. P. 25(c).

Rule 25(c) does not apply to transfers of interest that occur "prior to the

commencement of a lawsuit." *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53

F.3d 186, 190 (8th Cir. 1995). Rule 25's provisions all address changes to a party that occur

after a lawsuit is filed, not before. Rule 25(a) says that if a party dies "and the claim is not

thereby extinguished, the court may order substitution of the proper parties." FED. R. CIV.

P. 25(a). Rule 25(b) says that if a party becomes incompetent, the court may appoint a

substitute representative. FED. R. CIV. P. 25(b). Rule 25(d) says that if "a public officer is

a party to an action in an official capacity and during its pendency dies, resigns, or otherwise

ceases to hold office, the action does not abate and the officer's successor is automatically

substituted as a party." FED. R. CIV. P. 25(d). The underlying purpose of Rule 25 is to

provide for substitutions in case a particular event (death, incompetency, transfer of interest)

occurs during the pendency of a suit, not before.

The plaintiffs filed this suit against the National Seal Plan in December 2003.  (Docket Entry No. 1).  They now seek to substitute GSE as a successor-in-interest to the National Seal Plan through its acquisition of the National Seal Company.  The mergers by which GSE became the successor-in-interest to the National Seal Company—the 1999 merger with Serrot International after WMI purchased the National Seal Company and the 2002 merger with GSE—took place long before this suit commenced.  Rule 25(c) does not provide a basis for the substitution that the plaintiffs seek.  *ELCA Enters.*, 53 F.3d at 190; *Matter of Covington Grain Co., Inc*, 638 F.2d 1357, 1364 (5th Cir. 1981) (stating that Rule 25(c) was "not designed to create new relationships among parties to suit but is designed to continue unabated when an interest in lawsuit changes hands"); *Horphag Research LTD v. Conac Indus., Inc.*, 116 F.3d 1450, 1453 (Fed. Cir. 1997) (stating that Rule 25(c) "only applies to pending litigation").

Because the transfer of interest in this case occurred before the suit commenced, Rule 25(c) does not provide a basis for the relief that the plaintiffs seek.  Their motion to substitute is denied.

III.    **The Motion for Turnover After Judgment and Appointment of Receiver**

Under Rule 64 of the Federal Rules of Civil Procedure, a court may order the seizure of property for the purpose of "securing satisfaction of the judgment."  FED. R. CIV. P. 64. The manner in which property is seized depends upon state law.

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be

> entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held.

FED. R. CIV. P. 64.

The Texas statute governing turnover is section 31.002 of the Texas Civil Practice & Remedies Code.  This statute is a "procedural mechanism that gives Texas courts the power to satisfy a judgment by reaching the assets of a judgment debtor that cannot be attached or levied by ordinary legal process." *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 322 (5th Cir. 2006).  Section 31.002 provides:

> A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that
>
> > (1)   cannot readily be attached or levied on by ordinary legal process; and
> >
> > (2)   is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

TEX. CIV. PRAC. & REM. CODE § 31.002.

The Texas turnover statute may be used only to reach "assets of parties to the judgment, not the assets of non-judgment third parties."  *Bollore*, 448 F.3d at 322.  "A turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process."  *Id.*  The plaintiffs are requesting a turnover of property from the National Seal Plan.  They cannot seek a turnover of property from GSE.

7

Texas law also provides that a court may "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." TEX. CIV. PRAC. & REM. CODE § 31.002(c). Courts consider several factors in determining the need for receivership, including the following:

     (1)    whether there exists a valid claim by the party seeking the appointment;

     (2)    the probability that fraudulent conduct has occurred or will occur;

     (3)    the likelihood of imminent danger that property will be concealed, lost, or diminished in value;

     (4)    the inadequacy of legal remedies;

     (5)    the lack of a less drastic equitable remedy; and

     (6)    the likelihood that appointing the receiver will do more good than harm.

*Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir. 1993). The "appointment [of a receiver] is in the sound discretion of the court." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir. 1997). "The form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." 12 CHARLES A. WRIGHT & ARTHUR R. MILLER, *Federal Practice & Procedure* § 2983.

The record does not support the issuance of a turnover order or the appointment of a receiver. The request for turnover lacks specificity. Counsel for the plaintiffs has submitted

an affidavit stating the National Seal Plan owns "non-exempt personal property of the nature

and type that cannot by ordinary legal means be levied or attached" and that such property

is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(Docket Entry No. 39-2, ¶ 3).  In *Santibanez*, the Fifth Circuit held that the plaintiff had made

a sufficient showing that the defendant owned nonexempt property by listing specific

property that was exempt (and therefore appropriate for turnover). *Santibanez*, 105 F.3d at

240.  In the present case, by contrast, the plaintiffs rely only on the general conclusory

statement that "defendants own non-exempt personal property of the nature and type which

cannot by ordinary legal means or process be levied or attached to satisfy the judgment" and

"cannot readily be attached or levied on by ordinary legal process and is not exempt from

attachment, execution or seizure for the satisfaction of liabilities." (Docket Entry No. 39-2,

¶ 3).  This is an insufficient basis for the relief sought.

     Nor have the plaintiffs made a showing that there is a National Seal Plan that owns

property.  There is no basis to conclude from this record that the National Seal Plan existed.

The record shows that a National Seal Plan was created as a severance plan for the National

Seal Company employees, as Torres states in his affidavit.  However, the record also shows

that the Plan would come into existence only on a specified contingency:  National Seal

Company would sell 100% of its assets before January 1, 2001. (*Id.*).  This contingency did

not occur. (*Id.*).  Instead, WMI, which owned National Seal Company, purchased the Serrot

Corporation and merged it with National Seal Company, naming the merged company Serrot

International.  Because 100% of National Seal Company's assets were not sold before

January 1, 2001, the National Seal Plan never came into effect.  As GSE points out, even if

Serrot International had decided to "adopt" the National Seal Plan after the 1999 merger with

the National Seal Company, as Torres contends in his affidavit, the Plan would not apply to

any employee terminated after January 1, 2001 because the contingency specified in the Plan

had not occurred.  If the National Seal Plan never came into effect, there is no property that

could be subject to a turnover order or receivership.  The motion is denied.

## IV.    Conclusion

The motions to substitute and the motions for turnover and appointment of a receiver

are denied.

SIGNED on June 4, 2007, at Houston, Texas.

_____
                Lee H. Rosenthal
           United States District Judge